UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

KENNETH LOWRY,

                Plaintiff,

v.                                                                1:15-CV-1553
                                                                  (GTS/WBC)
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| OFFICE OF PETER M. MARGOLIUS<br>  Counsel for Plaintiff<br>7 Howard St.<br>Catskill, NY 12414 | PETER M. MARGOLIUS, ESQ. |
| U.S. SOCIAL SECURITY ADMIN.<br>OFFICE OF REG'L GEN. COUNSEL – REGION II<br>  Counsel for Defendant<br>26 Federal Plaza – Room 3904<br>New York, NY 10278 | MICHELLE L. CHRIST, ESQ. |

William B. Mitchell Carter, U.S. Magistrate Judge,

## REPORT and RECOMMENDATION

      This matter was referred for report and recommendation by the Honorable Judge Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d).  (Dkt. No. 19.)  This case has proceeded in accordance with General Order 18.

      Currently before the Court, in this Social Security action filed by Kenneth Lowry ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings. (Dkt. Nos. 13, 18.) For the reasons set forth below, it is recommended that Plaintiff's motion be denied and Defendant's motion be granted.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was 48 at the time of the hearing. (T. 50.) He received a GED diploma and some college. (*Id.*) Generally, Plaintiff's alleged disability consists of disc bulge at L5-S1, right shoulder impairment, and mental impairments. (T. 186.) His alleged disability onset date is December 21, 2012. (T. 49.) His date last insured is March 31, 2009. (T. 186.) He previously worked as a welder, hardware store worker, and maintenance worker. (T. 210-216.)

### B. Procedural History

On December 21, 2012, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II, and Supplemental Security Income ("SSI") under Title XVI, of the Social Security Act. (T. 160.) Plaintiff's applications were initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ"). On May 20, 2014, Plaintiff appeared before the ALJ, Paul F. Kelly. (T. 44-74.) On June 5, 2014, ALJ Kelly issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 13-30.) On November 5, 2015, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C. The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law. (T. 18-26.) First, the ALJ found that Plaintiff met the insured status requirements through March 31, 2009 and Plaintiff had not engaged in substantial gainful activity since December 21, 2012. (T. 18.) Second, the ALJ found that Plaintiff had the severe impairments of degenerative disc disease, lumbar radiculopathy, chronic pain disorder, status post right shoulder surgery, status post left knee surgery, anxiety disorder, and major depressive disorder. (*Id.*) Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 20-22.) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work[1]; however, he could only occasionally climb ramps, stairs, ladders, ropes or scaffolds; and occasionally balance, stoop, kneel, crouch and crawl. (T. 22.) Further, the ALJ found that Plaintiff must avoid concentrated exposure to moving machinery, unprotected heights and hazardous machinery. (*Id.*) The ALJ found that Plaintiff is limited to simple, routine tasks requiring only occasional interaction with the public and co-workers. (*Id.*) Fifth, the ALJ determined that Plaintiff was incapable of performing his past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 25-26.)

## II.   THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.   Plaintiff's Arguments

---

[1] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. §§ 404.1567(a), 416.967(a).

Plaintiff makes one argument in support of his motion for judgment on the pleadings. Plaintiff argues the ALJ's mental RFC determination was not supported by the opinion of the consultative examiner, to whom the ALJ afforded significant weight. (Dkt. No. 13 at 3-5 [Pl.'s Mem. of Law].)

### B. Defendant's Arguments

In response, Defendant makes one argument. Defendant argues the ALJ's mental RFC determination was supported by substantial evidence. (Dkt. No. 18 at 5-7 [Def.'s Mem. of Law].)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.      Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court has recognized the validity of this sequential evaluation process.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The five-step process is as follows:

(1) whether the claimant is currently engaged in substantial gainful activity;
(2) whether the claimant has a severe impairment or combination of

5

impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

### IV. ANALYSIS

Plaintiff did not receive consistent mental health treatment; however, the record contains mental health clinical examinations from Greene County Mental Health Center, Columbia County Mental Health Center, and a consultative psychiatric examination performed by Kerry Brand, Ph.D.

On April 2012, Plaintiff sought care from Greene County Mental Health Center for anxiety, panic attacks, mild depression, and anger problems. (T. 264.) A mental status examination at the time revealed that Plaintiff was neat, well-groomed, polite and cooperative, but "effectively guarded." (T. 267.) Plaintiff was non-psychotic, non-suicidal, appeared of average intelligence, had "fairly good" insight, and "questionable" judgment and impulse control. (*Id.*) Plaintiff's thought process was clear and logical, and his speech was normal and coherent. (*Id.*) Notations from Green County Mental Health Center indicated that Plaintiff's case was terminated (never opened) due to missed appointments. (T. 261.)

Plaintiff again sought treatment from Green County Mental Health Center in September of 2012. (T. 373.) David Fleming, Associate Psychologist, conducted the intake and noted that Plaintiff was anxious, irritable, and argumentative. (*Id.*) Plaintiff's affect was intense, and his mood was irritable and anxious. (T. 374.) Mr. Fleming

6

indicated that he had a difficult time interviewing Plaintiff because Plaintiff was argumentative and hostile. (T. 377.)

In January of 2013, Plaintiff sought treatment at Columbia County Mental Health Center. (T. 379.) Plaintiff was calm and cooperative, his affect was "dampened," his insight was fair, and his judgment was intact. (T. 385.)

On March 13, 2013, Dr. Brand conducted a consultative psychiatric evaluation and provided a medical source statement. (T. 429-433.) On examination, Dr. Brand observed that Plaintiff was cooperative and his manner of relating was appropriate. (T. 431.) Dr. Brand noted Plaintiff was appropriately dressed, had good hygiene, and made appropriate eye contact. (*Id.*) Plaintiff's speech was fluent, his voice was clear, and his language was adequate. (*Id.*) Plaintiff's thought processes were coherent and goal directed. (*Id.*) Dr. Brand observed that Plaintiff's affect was full, and appropriate in speech and thought content. (*Id.*) Plaintiff's mood was dysthymic and anxious. (*Id.*) Dr. Brand observed that Plaintiff's attention and concentration were mildly impaired, his recent and remote memory skills were mildly impaired, and his cognitive functioning was estimated to be in the average range. (*Id.*) Dr. Brand noted Plaintiff's insight and judgment were fair. (T. 432.)

In a medical source statement, Dr. Brand opined that Plaintiff could follow and understand simple directions and instructions, and perform simple tasks with supervision. (T. 432.) Dr. Brand stated that Plaintiff "may have mild difficulty maintaining attention and concentration, and moderate difficulty maintaining a regular schedule." (*Id.*) Dr. Brand stated that Plaintiff "may have mild to moderate difficulty learning new tasks and performing complex tasks independently." (*Id.*) He opined

7

Plaintiff "may have moderate difficulty making appropriate decisions, relating adequately with others, and moderate to severe difficulty dealing appropriately with stress." (*Id.*)

The ALJ limited Plaintiff to simple, routine tasks requiring only occasional interaction with the public and co-workers. (T. 22.) In formulating his mental RFC determination, the ALJ afforded Dr. Brand's opinion "significant weight" reasoning that it was consistent with diagnostic studies, clinical observations and the reports of other physicians participating in Plaintiff's care. (T. 24.) The ALJ also relied on treatment notations in the record. (*Id.*)

Plaintiff argues that the ALJ's mental RFC determination failed to include, without explanation, Dr. Brand's opinion that Plaintiff had a moderate difficulty in maintaining a regular schedule. (Dkt. No. 13 at 4-5 [Pl.'s Mem. of Law].) Plaintiff argues this error was harmful because a moderate difficulty in maintaining a regular schedule equates to being off task 20% of the day or missing four or more days of work a month which would render Plaintiff unemployable based on the vocational expert testimony. (*Id.*)

Plaintiff's argument that a "moderate" limitation in the ability to maintain a routine equates to being off task 20% of the day or missing four or more days of work per month is without merit. (Dkt. No. 13 at 4-5 [Pl.'s Mem. of Law].) Plaintiff concludes, without support, that the terms "moderate" and "occasional" are synonymous and because occasional is defined by the Social Security Administration as "up to one-third" of the day, then moderate must as well. *See* SSR 96-9P (S.S.A. July 2, 1996) (occasionally means occurring from very little up to one- third of the time, and would generally total no more than about 2 hours of an 8-hour workday). Plaintiff cites no

8

legal authority to support his argument[2]. Plaintiff's argument, while interesting, is based on speculation. *See Bembridge v. Comm'r of Soc. Sec.*, No. 15-CV-745, 2016 WL 3777739, at *12 (N.D.N.Y. May 16, 2016), *report and recommendation adopted sub nom. Bembridge v. Colvin*, No. 15-CV-0745, 2016 WL 3822763 (N.D.N.Y. July 12, 2016) (plaintiff made an "inappropriate leap in analysis" in concluding that doctor's opinion that plaintiff moderate limitation in concentration equated to being off-task 20% of the day).

Here, Dr. Brand indicated that Plaintiff "may have" a "moderate" difficulty in maintaining a regular schedule. (T. 432.) The ability to maintain a regular schedule falls under the category of concentration and persistence. *See* SSA Form SSA-4734. The Second Circuit has held that a moderate limitation in the area of concentration, persistence, or pace would not necessarily preclude the ability to perform unskilled work. *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) ("None of the clinicians who examined [plaintiff] indicated that she had anything more than moderate limitations in her work-related functioning, and most reported less severe limitations."); *see Matta v. Astrue*, 508 F. App'x 53, 55 (2d Cir. 2013) ("[t]he ALJ found that plaintiff had moderate difficulties in concentration, persistence and pace and moderate difficulties in social functioning that limit [him] to simple, routine, low-stress, and unskilled tasks, which involve no more than minimal contact with co-workers, supervisors and the general public.") (internal quotation omitted); *see Whipple v. Astrue*, 479 Fed. App'x. 367, 370 (2d Cir. 2012) (consultative examiners' findings that plaintiff's depression caused

---

[2] Pursuant to General Order 18, Plaintiff's contentions "must be supported by specific reference to the portion of the record relied upon and by citations to statutes, regulations, and cases supporting plaintiff's position." Gen. Order 18 at 2 (Sept. 12, 2003). General Order 18 was amended January 22, 2016; however, this language was included. Gen. Order 18 at 5 (Jan. 22, 2016).

moderate limitations in social functioning ultimately supported the ALJ's determination that plaintiff was capable of performing work that involved simple tasks and allowed for a low-stress environment).  Therefore, Dr. Brand's opinion, that Plaintiff "may have" a "moderate" limitation in his ability to maintain a schedule would not be inconsistent with the ALJ's RFC determination that Plaintiff could perform simple, routine work.

In addition, the ALJ did not, as Plaintiff contends, fail to provide a rationale as to why Dr. Brand's "moderate" limitation in maintaining a schedule was not included in the RFC.  (Dkt. No. 13 at 4-5 [Pl.'s Mem. of Law].)  As outlined herein, the ALJ's RFC limited Plaintiff to simple, routine tasks, which accounted for a possible "moderate" limitation in maintaining a routine.

In sum, Plaintiff's argument that  "moderate" equates to "occasional" and therefore a moderate limitation in the ability to maintain a routine translates to plaintiff being off task 20% of the day or absent more than four days a month, is purely speculative.  For the reasons stated herein, the ALJ's mental RFC determination properly accounted for Dr. Brand's opinion that Plaintiff "may have" a "moderate" limitation in his ability to maintain a schedule because the ALJ limited Plaintiff to simple, routine work.  It is therefore recommended that the ALJ's mental RFC determination be upheld.

**ACCORDINGLY**, based on the findings above, it is

**RECOMMENDED**, that the Commissioner's decision be **AFFIRMED**, and the Plaintiff's complaint **DISMISSED.**

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report.

Any objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated:    March 16, 2017

_____
William B. Mitchell Carter
U.S. Magistrate Judge